IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2009 Session

## STATE OF TENNESSEE v. EDWARD LEE ADKINS

Appeal from the Circuit Court for Franklin County
No. 17750    J. Curtis Smith, Judge

No.  M2009-00528-CCA-R3-CD - Filed August 25, 2010

On the evening of May 25, 2007, Appellant, Edward Lee Adkins, was arrested at the hospital for driving under the influence ("DUI").  This arrest occurred after Trooper Brandon Hunt was called to the scene of an accident where he found a truck registered to Appellant upside down in a ditch. When Trooper Hunt arrived at the hospital, he smelled alcohol and ordered a blood alcohol test. Appellant's blood alcohol level was found to be 0.19 percent by the Tennessee Bureau of Investigation ("TBI") Crime Laboratory.  The Franklin County Grand Jury indicted Appellant for two counts of DUI, one count of DUI, third offense, one count of reckless driving, and one count of violation of the registration law.  After a jury trial, Appellant was convicted of both counts of DUI, reckless driving, and violation of the registration law.  The trial court held a bench trial and determined that Appellant was guilty of DUI, third offense.  Appellant was sentenced to an effective sentence of eleven months and twenty-nine days, with one hundred and twenty days to be served in jail and the remainder to be served on probation.  On appeal, Appellant argues that the trial court erred in admitting the two convictions used to support his conviction for DUI, third offense because they were not self-authenticating.  Appellant also argues that the evidence was insufficient to support his convictions for DUI, third offense and reckless driving.  After a thorough review of the record, we conclude that both issues are without merit.  Therefore, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Norris A. Kessler, III, for the appellant, Edward Lee Adkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; J. Michael Taylor, District Attorney General; Steven M. Blount and William Copeland, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On May 25, 2007, at 11:10 p.m., Trooper Brandon Hunt, with the Tennessee Highway Patrol, responded to an accident scene at Keith's Cove Road in Franklin County. Upon his arrival, Trooper Hunt discovered a white pickup truck upside down in a ditch. The truck had crossed the center line while traveling and landed in the ditch. Trooper Hunt could smell " a strong odor of intoxicating beverage" in the truck. The driver of the pickup truck had already been taken to the hospital. Trooper Hunt discovered that Appellant was the owner of the pickup truck.

Trooper Hunt proceeded to the hospital and found Appellant in an exam room. When Trooper Hunt asked Appellant about the accident, Appellant told him that he was driving the truck, lost control, and crashed the truck. Appellant also said that a friend had brought him to the hospital. While speaking with Appellant, Trooper Hunt smelled alcohol and noticed that Appellant's speech was slurred and that Appellant's eyes were bloodshot and watery. Appellant was strapped to a "spine board," so Trooper Hunt could not administer any field sobriety tests. Therefore, he asked Appellant to submit to a blood alcohol test. Appellant agreed to have a blood sample taken.

Shortly thereafter, Mary Garrett, a phlebotomist, drew blood from Appellant. She later testified that she followed the standard procedure in drawing the blood from Appellant and signed the vial of blood and sealed the tube in a bag. Trooper Hunt handed her a box and she placed the sealed blood and accompanying paperwork in the box. Ms. Garrett handed the box to the trooper. Trooper Hunt took the box and kept it until he sent it to the TBI Crime Lab for testing. After Ms. Garrett took the blood sample, Trooper Hunt arrested Appellant for DUI.

John Harrison is a forensic scientist with the TBI. He received the sealed sample of blood taken by Ms. Garrett on June 14, 2007. There were no problems with the sample and it was in good condition. He stated that he actually tested the sample on June 16, 2007. The sample contained "ethyl alcohol at a level of 0.19 gram percent." Mr. Harrison stated that this was "more than double the legal limit."

On September 4, 2007, the Franklin County Grand Jury indicted Appellant for two counts of DUI, one count of DUI, third offense, one count of reckless driving and one count of violation of the registration law. At the conclusion of a jury trial held on August 26, 2008, a jury found Appellant guilty of both counts of DUI, reckless driving, and violation of the registration law. The trial court held a bench trial and determined that Appellant was guilty of DUI, third offense. On November 26, 2008, the trial court held a sentencing hearing. The trial court sentenced Appellant to eleven months and twenty-nine days suspended except for one hundred and twenty days to be served in jail for his DUI, third offense conviction; to six months probation for reckless driving; and

thirty days probation for violation of registration law. The trial court ordered the sentences to be served concurrently. The trial court also ordered Appellant to perform one hundred hours of public service and suspended Appellant's drivers' license for one year. Appellant filed a timely notice of appeal.

## ANALYSIS

### Authentication of Documents

Appellant's first argument on appeal is that the trial court erred in admitting copies of the judgments of Appellant's prior DUI convictions because the judgments admitted were not self-authenticating because neither copy met the requirements of Rule 902(4) of the Tennessee Rules of Evidence. The State argues that the documents were properly admitted.

Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility [of evidence] is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this foundation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Neil P. Cohen et al., Tennessee Law of Evidence § 9.01[2][a] (5th ed. 2005). With regard to a public record or report, "[u]nless the writing is self-authenticating pursuant to rule 902, testimony must be presented by an individual with personal knowledge that the particular writing or record meets the requirements of this rule." Cohen et al., Tennessee Law of Evidence § 9.01 [9]; *see also* Tenn. R. Evid. 901(b)(7). Rule 902 of the Tennessee Rules of Evidence states in pertinent part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required as to the following:
>
> (1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the State of Tennessee, the United States (or of any other state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands), or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution.
>
> (2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
>
> . . . .

-3-

(4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office (including data compilations in any form), certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or the Tennessee Legislature or rule prescribed by the Tennessee Supreme Court.

The State presented two copies of previous judgments entered against Appellant for DUI. The first was for DUI, first offense. Appellant pled guilty to the offense on January 10, 2001. The second judgment is also for DUI. Appellant pled guilty to the offense on May 11, 2004. Both copies of the judgments have a raised Franklin County Court seal with the following language in blue ink, "CERTIFIED COPY I certify that this is a true copy of the original order/pleading filed in the Circuit-General Sessions-Juvenile Courts of Franklin County, TN" and both are signed and dated August 25, 2008, by a deputy clerk.

Appellant argues that these documents do not meet the requirements as set out in Rule 902(1) and (4) because they "bear no seal to indicate authenticity." Appellant relies upon *State v. Danny Ralph Troutman*, No. E2007-01536-CCA-R3-CD, 2008 WL 4756874 (Tenn. Crim. App., at Knoxville, Oct. 30, 2008). In *Danny Ralph Troutman*, the defendant was convicted of DUI, fourth offense. To prove his prior offenses, the documents the State presented included "copies of abstracts of record from the Tennessee Department of Safety Driver Control Division" and another document that was "a copy of a Tennessee Department of Safety 'court action report.'" *Danny Ralph Troutman*, 2008 WL 4756874, at *5. All the documents reflected the defendant's previous convictions for DUI. Each document was signed by a judge or clerk. This Court stated that, "On the back of each document is a red ink stamp containing the facsimile signature of Kenneth W. Birdwell," who was the Commissioner of the Department of Safety at the time, and language certifying that the document was a true and correct copy of what was on file with the Department. *Id.* at *5-6.

The defendant challenged the admissibility of the documents based upon Rule 902(4). The defendant challenged the admissibility on three bases. *Id.* at *6. In the defendant's third issue in *Danny Ralph Troutman*, he challenged the documents' fulfillment of Rule 902(4) based upon the fact that "the certification on the documents does not bear a seal to indicate authenticity as is required by Rule 902(1) or an accompanying attestation as is required by Rule 902(2)." *Id.* This court concluded that the documents did not comply with Rule 902(1) because, "[t]he signatory did not affix a seal to the documents; therefore, the documents were not 'under seal' for the purposes of Rule 902(1)." *Id.* Furthermore, we concluded that there was no additional certification from another officer under seal, so the documents did not meet the requirements of Rule 902(2). As stated by this Court, seals are required in Rule 902(1) and 902(2) because such documents with seals have more reliability because they are harder to forge than documents without seals. *See id.* at *7.

-4-

The case at hand is easily distinguishable from *Danny Ralph Troutman*. Rule 902(1) requires that the signatory affix a seal to the documents. In *Danny Ralph Troutman*, the signatory, Commissioner Birdwell, did not affix a seal to the documents. Instead, a red ink stamp certifying the copies as true copies was stamped onto the back of the documents. In Appellant's case, the signatories, the deputy clerks, affixed the seal of the Franklin County Courts to the documents accompanying their signatures. Therefore, the requirements of Rule 902(1) are met, and no further analysis under Rule 902(2) is needed.

Furthermore, in *Danny Ralph Troutman*, while listing alternative evidence of prior convictions, we specifically stated that "properly certified judgments of conviction would have also been admissible." *Id.* We conclude that the judgments as presented are properly certified copies and as such are self-authenticating under Rule 902(4).

In *State v. Junior Lee Beck*, No. 03-01-9106-CR-00163, 1992 WL 141012 (Tenn. Crim. App., at Knoxville, June 24, 1992), this Court addressed a similar issue. In *Junior Lee Beck*, the State produced various documents to prove the defendant's prior felony convictions to support his sentencing as a career offender. Among the documents presented were certified copies of judgments, abstracts of other judgments authenticated by the clerk of the court, and certified copies of the trial court minutes. *Junior Lee Beck*, 1992 WL 141012, at *1. After citing to Rule 902(4), this Court determined that the documents were "domestic public documents under seal" as set out in Rule 902(1). We stated:

> All copies of the prior convictions bear the seal of the clerk. *See AMFAC Distribution Corp. v. Harrelson*, 842 F.2d 304 (11th Cir. 1988). Former Tenn. R. Crim. P. 27(1) provided that an official record could be placed into evidence by the custodian of the record or by his deputy (deleted effective July 1, 1991). In *State v. Wilcoxson*, 772 S.W.2d 33 (Tenn. 1989), our Supreme Court permitted the introduction of an out-of-state conviction which, although unsigned by the trial judge, had been authenticated by the holder of the records.

*Id.* at *2.

We have held in other cases that a signature by the clerk of a court stating that the documents provided are true copies is sufficient to meet the burden of Rule 902. This Court has also maintained, while citing to Rule 902, that the signed certification by a deputy clerk alone, without a seal, "was sufficient to indicate that the copy of the [prior] conviction was not false or unreliable . . . ." *State v. Ralph D. Cooper*, No. 02C01-9709-CR-00339, 1998 WL 397368, at * 2 (Tenn. Crim. App., at Jackson, Jul. 17, 1998). In another case, this Court upheld the introduction of copies of judgments from Pennsylvania when they were "certified as a true copy from the records of the Clerk of the Courts of Cumberland County, Pennsylvania. A Deputy Clerk signed the copies and affixed the seal of the Cumberland County Courts." *State v. Brian Keith Martin*, No. 02C01-9410-CC-00212, 1997 WL 210942, at *10 (Tenn. Crim. App., at Jackson, Apr. 30, 1997).

As in the cases cited to above, the certified copies of the judgments in the case at hand have been signed and certified by the deputy clerk of the Franklin County courts as true copies of the judgments. For this reason, we conclude that the judgments meet the requirements of Rule 902(4). Therefore, the trial court did not abuse its discretion in admitting the certified copies of Appellant's prior DUI convictions into evidence.

This issue is without merit.

## Sufficiency of the Evidence

Appellant also argues that the evidence was insufficient to support his conviction for DUI and reckless driving. Appellant argues that the evidence was insufficient to prove that he was driving the truck, that his blood alcohol level was above .08, and that in what manner he was driving, if he was driving. The State argues that the evidence was sufficient to support his conviction for both DUI and reckless driving.

We will first address Appellant's argument that there was insufficient evidence to prove that Appellant was under the influence of an intoxicant or that his blood alcohol level was above .08 percent. He states there was insufficient evidence to prove this fact, "based on the testimony of Mary Garrett and John Harrison." Appellant's argument is essentially an attack on the chain of custody of the blood sample.

As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. *State v. Goodman*, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The purpose of the chain of custody requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). While the State is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. *State v. Ferguson*, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). This rule does not require absolute certainty of identification. *Ritter v. State*, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970). Absent sufficient proof of the chain of custody, however, the "evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means." Cohen et al., Tennessee Law of Evidence § 9.01[13][c]. A leading treatise on evidence explains:

> The concept of a "chain" of custody recognizes that real evidence may be handled by more than one person between the time it is obtained and the time it is either introduced into evidence or subjected to scientific analysis. Obviously, any of these persons might have the opportunity to tamper with, confuse, misplace, damage, substitute, lose and replace, or otherwise alter the evidence or to observe another doing so. Each person who has custody or control of the evidence during this time is a "link" in the chain of custody. Generally, testimony from each link is needed to

verify the authenticity of the evidence and to show that it is what it purports to be. Each link in the chain testifies about when, where, and how possession or control of the evidence was obtained; its condition upon receipt; where the item was kept; how it was safeguarded, if at all; any changes in its condition during possession; and when, where and how it left the witness's possession.

*Id.* The issue addresses itself to the sound discretion of the trial court; its determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. *State v. Beech*, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987); *State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). "Reasonable assurance, rather than absolute assurance, is the prerequisite for admission." *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000).

At trial, Trooper Hunt testified that he watched Ms. Garrett draw blood from Appellant's arm. He watched her seal the vial of blood, sign it, and place it into a bag. Trooper Hunt and Ms. Garrett then filled out an information sheet that was placed in a box with the vial of blood. Trooper Hunt sealed the box and took control of it. Ms. Garrett stated at trial that she did not specifically remember Appellant, but she follows the same procedure when drawing blood for law enforcement testing. She stated the same steps to which Trooper Hunt testified. At trial, Ms. Garrett identified her signature on the sheet that was contained in the box with the vial of blood. Trooper Hunt testified that he sent the sealed box containing the vial of blood to the TBI laboratory. Mr Harrison testified that on June 13, 2007, a TBI technician received a sealed blood alcohol kit at the TBI laboratory and entered it into the computer system, according to laboratory procedure. On June 14, 2007, this sample was given to Mr. Harrison for testing. He testified that the sample was in good condition when he received it.

We conclude that the evidence presented at trial "reasonably assure[s] the identity" of the blood alcohol kit. *See Ferguson*, 741 S.W.2d 127. The testimony of Trooper Hunt, Ms. Garrett, and Mr. Harrison has sufficiently shown that the blood alcohol kit contained a sample of Appellant's blood and, therefore, the resulting 0.19 percent blood alcohol level of the blood can be assumed to be the blood alcohol level of Appellant's blood at that time.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the

strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

The statute setting out DUI is found at Tennessee Code Annotated section 55-10-401 which provides:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
>
> (2) The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more.

Reckless driving is defined as, "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property . . . ." T.C.A. § 55-10-205(a).

We now view the evidence in a manner more favorable to the State. As stated above, the result of the blood alcohol test conducted by the TBI concluded that Appellant's blood alcohol level was 0.19 percent. Clearly, the alcohol concentration in Appellant's blood was above the level set out in the statute of 0.08 percent.

Appellant also argues for purposes of attacking both his DUI, third offense conviction and his reckless driving conviction that there was not sufficient evidence that he was driving the truck at the time of the accident. However, we conclude that there was sufficient evidence. When Trooper Hunt arrived at the hospital, he questioned Appellant regarding the accident. Appellant told Trooper Hunt that he had been driving the truck and a friend had brought him to the hospital. Trooper Hunt had run Appellant's license plate numbers and discovered that the truck was registered to Appellant. When conclude that when this evidence is taken in a light more favorable to the State, a reasonable trier of a fact would conclude that Appellant was driving the truck at the time of the accident. In addition, a reasonable trier of fact would conclude that an individual was driving with "willful or

wanton disregard for the safety of persons or property" when they drive with a blood alcohol level of 0.19 percent, such that the driving results in a driving wreck.

Therefore, the evidence was sufficient to support Appellant's convictions.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE